¶ 18. In my view, the business deal at issue was a joint venture as indicated by the express language in the Operating Agreement, and due to the required elements set out in Hults v. Tillman, 480 So.2d 1134, 1142 (Miss. 1985). Therefore, the majority's decision to reverse and render this cause is incorrectly decided. I would affirm the chancellor and the Court of Appeals. Accordingly, I respectfully dissent.
¶ 19. This Court has written:
 In Sample v. Romine, the leading Mississippi case on the subject, this Court first observed no exact definition could be given of a joint venture, the answer in each case depended upon the terms of the agreement, the acts of the parties, the nature of the undertaking and other facts. We broadly defined a joint venture *Page 829 
as an association of persons to carry out a single business enterprise for profit, for which purpose they combine their property, money, efforts, skill and knowledge. We said it exists when two or more persons combine in a joint business enterprise for their mutual benefit with an understanding that they are to share in profits or losses and each to have a voice in its management. We noted a condition precedent for its existence was a joint proprietary interest in the enterprise and right of mutual control. The joint purpose of the enterprise distinguishes it from a mere tenancy in common. We further held an agreement, express or implied, for sharing in the profits is essential, but there need be no specific agreement to share in the losses, and if the nature of the undertaking was such that no losses other than those of time and labor in carrying it out was likely to occur, an agreement to share in the profits might stamp it as a joint venture, although nothing was said about the losses. We said a contract between the parties was necessary, but it need not be embodied in a formal agreement, but might be inferred from the facts, circumstances and conduct of the parties. Finally, we said it differed from a general partnership because it related to a single transaction, while a partnership usually related to a general and continuing business, and that a joint venture was of a shorter duration, and the agreement was less formal.
Hults, 480 So.2d at 1142 (emphasis added).
¶ 20. It is my view that the Term Sheet was unambiguous and the Investors' arguments lack merit. First, as the Court of Appeals aptly noted, the express terms of the Term Sheet clearly set forth an agreement for sharing the profits:
 That (name of the co-venturer) shall participate as to a (percentage) working interest in the venture, said working interest being subject to a twenty-five (25%) royalty burden. . . . (name of the co-venturer) agrees that (his/her) (percentage) working interest shall be reduced by 20% after pay-out, on a prospect by prospect basis.
¶ 21. Moreover, under the Operating Agreement, as agreed by Shipley and Weber, there is a specific provision for the allocation of losses:
 B. Interests of Parties in Costs and Production: Unless changed by other provisions, all costs and liabilities incurred in operations under this agreement shall be borne and paid, and all equipment and materials acquired in operations on the Contract Area shall be owned, by the parties as their interests are set forth in Exhibit "A".
In addition to the language detailing the profit-sharing, the Term Sheet also states in unequivocal terms, that each co-venturer shall have a "working interest" based on his or her percent of their assignment. The chancellor stated that a "`working interest' is virtually synonymous with the term `leasehold interest.' The working interest owner bears the expense of exploration, drilling, and producing oil and gas . . . It is contrasted with the landowner's royalty interest, which bears no part of the production expense." (citing OXY, USA, Inc. v. Colorado InterstateGas Co., 883 P.2d 1216, 1224 (Kans. Ct. App. 1994)).
¶ 22. The majority concludes that the requirement that joint venturers have a "right of mutual control" is lacking. The express terms of the Operating Agreement set out the control the Investors have in this project. As the Court of Appeals noted, Article V, Operator, subparagraph B.1, provides for the removal of the operator, Weber, in specific situations by the non-operators, Pittman: "Operator may be removed if it fails or refuses to carry out *Page 830 
its duties hereunder, or become insolvent, bankrupt or is placed in receivorship, by the affirmative vote of two (2) or more Non-Operators owning a majority interest based on ownership as shown on Exhibit `A' . . ." The Court of Appeals further noted that the Operation agreement provided measures in which the non-operators, Pittman, may propose additional drilling with the contract area. Moreover, further managerial decisions are available to non-operators, Pittman, wherein the unanimous "consent of all parties" the prospected wells may be "drilled or deepened" and "reworked or plugged back." In so agreeing to being bound by the Operating Agreement, as agreed by Shipley and Weber, each co-venturer obtained the "right of control."
¶ 23. Although it is unfortunate for these investors, it is obvious that the chancery lower court and Court of Appeals made the correct decision. This was a joint venture as indicated by the express language in the Operating Agreement, and due to the required elements set out in Hults.
¶ 24. Therefore, I respectfully dissent.
BANKS, P.J., AND COBB, J., JOIN THIS OPINION.